## UNITED STATES DISTRICT COURT FOR
## THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| MICHAEL MCLAIN, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. _____ |
| | ) | |
| v. | ) | JURY TRIAL DEMANDED |
| | ) | |
| TALLGRASS ENERGY, LP, WILLIAM R. | ) | |
| MOLER, MARCELINO OREJA ARBURUA, | ) | |
| GUY G. BUCKLEY, WALLACE C. | ) | |
| HENDERSON, MATTHEW J. K. RUNKLE, ROY | ) | |
| N. COOK, THOMAS A. GERKE, and | ) | |
| TERRANCE D. TOWNER, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

Plaintiff, Michael McLain, by his undersigned attorneys, for this Complaint against Defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel, as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1.      This is an action brought by Plaintiff against Tallgrass Energy, LP ("TGE" or the "Company")  and the members of the Company's board of directors (collectively referred to as the "Board" or the "Individual Defendants" and, together with TGE, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a) respectively, and United States Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9.  Plaintiff's claims arise in connection with the proposed acquisition of TGE by Prairie Private Acquiror LP ("Prairie") (the "Proposed Transaction").  Tallgrass Energy GP, LLC, ("TGE GP") is the general partner of TGE.

1

2.      On December 16, 2019, TGE entered into an agreement and plan of merger (the "Merger Agreement"), pursuant to which Prairie will merge with and into TGE, with TGE surviving the merger and continuing to exist as a Delaware limited partnership (the "Merger").   TGE shareholders will receive $22.45 in cash for each Class A share they own; a Class A share represents a limited partner interest of TGE (the "Merger Consideration").

3.      On January 21, 2020, in order to convince TGE public common shareholders to vote in favor of the Proposed Transaction, the Defendants authorized the filing of a materially incomplete and misleading Preliminary Proxy Statement (the "Proxy") with the SEC, in violation of Sections 14(a) and 20(a) of the Exchange Act.

4.      In particular, the Proxy contains materially incomplete and misleading information concerning: (i) financial projections for TGE; and (ii) the valuation analyses performed by TGE's financial advisor, Evercore Group L.L.C. ("Evercore").

5.      The Proposed Transaction is expected to close in the second quarter of 2020, so the special meeting of TGE's shareholders to vote on the Proposed Transaction is imminent (the "Shareholder Vote").   Therefore, it is imperative that the material information that has been omitted from the Proxy is disclosed prior to the Shareholder Vote, so TGE's shareholders can properly exercise their corporate voting rights.

6.      For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Defendants for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9.  Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to TGE's public common shareholders sufficiently in advance of the upcoming Shareholder Vote or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

7.      This Court has jurisdiction over all claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

8.      Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over each Defendant by this Court permissible under the traditional notions of fair play and substantial justice.  "Where a federal statute such as Section 27 of the [Exchange] Act confers nationwide service of process, the question becomes whether the party has sufficient contacts with the United States, not any particular state." *Sec. Inv'r Prot. Corp. v. Vigman*, 764 F.2d 1309, 1315 (9th Cir. 1985).  "[S]o long as a defendant has minimum contacts with the United States, Section 27 of the Act confers personal jurisdiction over the defendant in any federal district court." *Id.* at 1316.

9.      Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as 28 U.S.C. § 1391 because Defendants are found or are inhabitants or transact business in this District.  Indeed, TGE's Class A shares trade on the New York Stock Exchange ("NYSE"), which is also headquartered in this District.  *See, e.g., United States v. Svoboda*, 347 F.3d 471, 484 n.13 (2d Cir. 2003) (collecting cases).

## PARTIES

10.      Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of TGE Class A shares, which represent a limited partner interest of TGE.

11.      Defendant TGE is a limited partnership incorporated under the laws of Delaware with principal executive offices located at 4200 W. 115th Street, Leawood, Kansas.  TGE's Class A shares

are traded on the NYSE under the ticker symbol "TGE."

12.    Defendant William R. Moler is, and has been at all relevant times, a director and Chief Executive Office of TGE GP.

13.    Defendant Marcelino Oreja Arburua is, and has been at all relevant times, a director of TGE GP.

14.    Defendant Guy G. Buckley is, and has been at all relevant times, a director of TGE GP.

15.    Defendant Wallace C. Henderson is, and has been at all relevant times, a director of TGE GP.

16.    Defendant Matthew J.K. Runkle is, and has been at all relevant times, a director of TGE GP.

17.    Defendant Roy N. Cook is, and has been at all relevant times, a director of TGE GP.

18.    Defendant Thomas A. Gerke is, and has been at all relevant times, a director of TGE GP.

19.    Defendant Terrance D. Towner is, and has been at all relevant times, a director of TGE GP.

20.    The defendants identified in paragraphs 12 through 19 are collectively referred to herein as the "Board" or the "Individual Defendants," and together with TGE, the "Defendants."

## SUBSTANTIVE ALLEGATIONS

**Background of the Company and the Proposed Transaction**

21.    TGE owns, operates, acquires, and develops midstream energy assets in North America.  TGE's segments include: Crude Oil Transportation & Logistics (engaged in the ownership and operation of a crude oil pipeline system, and crude oil storage and terminaling facilities); Natural Gas Transportation & Logistics (engaged in the ownership and operation of interstate natural gas

4

pipelines and integrated natural gas storage facilities); Processing & Logistics (engaged in the ownership and operation of natural gas processing, treating and fractionation facilities, and the provision of water business services to the oil and gas exploration and production industry, and Corporate and Other).

22.     On December 16, 2019, the Board caused the Company to enter into the Merger Agreement with Prairie.

23.     Pursuant to the terms of the Merger Agreement, TGE stockholders will receive $22.45 in cash for each Class A share of TGE they own.

24.     According to the December 16, 2019, press release announcing the Proposed Transaction:

> ### Tallgrass Energy Announces Agreement for the Purchase of its Publicly-Held Class A Shares by Blackstone Infrastructure Partners
>
> Leawood, Kan., December 16, 2019 – Tallgrass Energy, LP (NYSE: TGE) today announced that it has entered into a definitive merger agreement pursuant to which affiliates of Blackstone Infrastructure Partners together with affiliates of Enagas, GIC, NPS and USS (collectively with Blackstone Infrastructure Partners, the "Sponsors") will acquire all of the publicly-held outstanding Class A Shares of TGE for $22.45 in cash per Class A Share.
>
> The transaction is expected to close in the second quarter of 2020, subject to the satisfaction of customary conditions, including approval of the merger by holders of a majority of the outstanding Class A and Class B Shares of TGE, voting together as a single class, inclusive of the approximately 44 percent of the total Class A and Class B Shares held by the Sponsors. Upon closing of the transaction, the Class A Shares will cease to be publicly traded. Pursuant to the merger agreement, TGE has agreed not to pay distributions during the pendency of the transactions contemplated by the merger agreement.
>
> The Conflicts Committee of the Board of Directors of Tallgrass Energy GP, LLC, TGE's General Partner ("TGE GP"), after consultation with its independent legal and financial advisors, unanimously approved the transaction and determined it to be in the best interests of TGE and its public shareholders.
>
> The Sponsors expect to fund the purchase of the Class A Shares with approximately $3 billion of equity, with the remainder of the funding necessary to consummate the transaction provided by debt.
>
> Citigroup Global Markets Inc. and Credit Suisse Securities (USA) LLC served as financial advisors and Vinson & Elkins L.L.P. acted as legal advisor to Blackstone Infrastructure Partners. Latham & Watkins LLP acted as legal advisor to Enagas. Sidley Austin LLP acted as legal advisor to GIC.
>
> Evercore Group LLC served as the financial advisor and Bracewell LLP acted as legal advisor to the Conflicts Committee of the Board of Directors of TGE's General Partner.

Baker Botts L.L.P. acted as legal advisor to TGE.

(Emphasis in original).

**The Proxy Omits Material Information**

25.     On January 21, 2020, Defendants filed a materially incomplete and misleading Proxy with the SEC.  The Shareholder Vote on the Proposed Transaction is forthcoming, given that the Proposed Transaction is expected to close in the second quarter of 2020.  The Individual Defendants were obligated to carefully review the Proxy before it was filed with the SEC and disseminated to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions.  However, the Proxy misrepresents or omits material information that is necessary for the Company's shareholders to make an informed voting decision in connection with the Proposed Transaction.

26.     First, the Proxy fails to provide enough information regarding financial projections for the Company.  In particular, the Proxy fails to disclose: (i) unlevered free cash flows for TGE for the years 2020 through 2023; (ii) all line items underlying TGE's Adjusted EBITDA; and (iii) a reconciliation of all non-GAAP to GAAP metrics.  Second, the Proxy omits material information regarding Evercore's financial analyses.

27.     First, the Proxy omits critical financial projections, including the unlevered free cash flow projections for TGE from 2020 through 2023 (the "Cash Flow Projections").  As stated in the Proxy, to perform its Discounted Cash Flow Analyses of TGE, Evercore utilized projections for TGE's unlevered free cash flow, which were provided by or prepared based upon direct input from TGE management.  Proxy at 43.  It is indisputable that the Cash Flow Projections were the most important input in TGE's Discounted Cash Flow Analyses—the entire analyses are based upon discounting the Cash Flow Projections to present value.  However, Defendants elected to exclude the Cash Flow Projections from the Proxy, despite the fact that they simultaneously elected to include a purported "summary" of Evercore's Discounted Cash Flow Analyses and TGE projections.

6

28.     Defendants elected to summarize the projections for TGE on pages 37 to 40 of the Proxy, but they excised and failed to disclose the most important projections—the Cash Flow Projections. The omission of the Cash Flow Projections renders the projection tables on pages 39 and 40 of the Proxy incomplete and misleading because, without the Cash Flow Projections, the projection summaries provide a misleading overall valuation picture of TGE.  This is caused by significant differences between unlevered free cash flow projections—widely recognized as the most important valuation metric when it comes to valuing a company and its stock—and the EBITDA projections that were included in the Proxy.

29.     EBITDA projection metrics *are not sufficient analogs for cash flow projections*. Well settled principles of corporate finance and valuation dictate that the value of companies and their stock should be premised upon the company's projected future cash flows, not projected EBITDA.[1] Evercore agrees, as indicated by their use of the Cash Flow Projections—not EBITDA—in performing their Discounted Cash Flow Analyses, and academics and practitioners concur.[2,3,4]

30.     There are fundamental differences between unlevered free cash flow and EBITDA. EBITDA is not a sufficient alternative to unlevered free cash flows—as Warren Buffet and other financial experts have stated: "References to EBITDA make us shudder.  Too many investors focus on earnings before interest, taxes, depreciation, and amortization.  That makes sense, only if you

---

[1]     Pratt, Shannon. "Net Cash Flow: The Preferred Measure of Return." Cost of Capital. 16. ("Occasionally, we find an analyst treating earnings before interest, taxes, depreciation, and amortization (EBITDA) as if it were free cash flow. This error is not a minor matter…").

[2]     "Morningstar's Approach to Equity Analysis and Security Valuation." *The Valuation Handbook: Valuation Techniques from Today's Top Practitioners*. Ed. Rawley Thomas and Benton E. Gup. Hoboken: John Wiley & Sons, 2010. 305. ("We use a discounted cash flow (DCF) approach to arrive at our intrinsic value estimates because it allows us to separate economic reality from accounting-based noise.").

[3]     Copeland, Thomas. *Financial Theory and Corporate Policy*. 3rd ed. 24. ("The main difference between the accounting definition and the economic definition of profit is that the former does not focus on cash flows when they occur, whereas the latter does… Financial managers are frequently misled when they focus on the accounting definition of profit…").

[4]     Brealey, Richard, Stewart Myers, and Franklin Allen. "The Value of Common Stocks." *Principles of Corporate Finance*. 10th ed. New York: McGraw-Hill Irwin, 2011. 80. ("This discounted-cash-flow (DCF) formula for the present value of a stock is just the same as it is for the present value of any other asset. We just discount the cash flows…. Notice that it is *not* correct to say that the value of a share is equal to the sum of the discounted stream of earnings per share.") (emphasis in the original).

think capital expenditures are funded by the tooth fairy."[5]  Relying solely on EBITDA to provide a fair summary of a company's financial prospects has numerous pitfalls.  EBITDA does not take into account any capital expenditures, working capital requirements, current debt payments, taxes, or other fixed costs that are critical to understand a company's value.[6]  As a result of these material differences between EBITDA and unlevered free cash flows, experts recognize unlevered free cash flows as a much more accurate measure when it comes to analyzing the expected performance of a company.

31.      In light of these significant differences between the Cash Flow Projections on the one hand, and the EBITDA figures disclosed in the Proxy, the tables of projections on pages 39 and 40 of the Proxy were materially incomplete and misleading because, by failing to include the Cash Flow Projections, the tables provide a materially incomplete and misleading overall valuation picture of TGE.  Simply put, unlevered free cash flow projections are irreplaceable when it comes to fully, fairly, and properly understanding a company's projections and value.

32.      Further, Defendants' failure to disclose all line items used to calculate Adjusted EBITDA and a reconciliation of all non-GAAP to GAAP metrics similarly renders the Proxy materially misleading.

33.      If a Proxy discloses financial projections and valuation information, such projections must be complete and accurate.  The question here is not the duty to speak, but liability for not having spoken enough.  With regard to future events, uncertain figures, and other so-called soft information, a company may choose silence or speech elaborated by the factual basis as then known—but it may not choose half-truths.  *See Campbell v. Transgenomic, et al.*, No. 18-2198 (8th Cir., March 1, 2019) (noting that "half-truths" are actionable misrepresentations under securities

---

[5]      Elizabeth   MacDonald,   *the   Ebitda   folly*,   FORBES   (March   17,   2003), http://www.forbes.com/global/2003/0317/024.html.
[6]      Cody Boyte, *Why EBITDA is Not Cash Flow*, AXIAL FORUM (Nov. 19, 2013), http://www.axial.net/forum/ebitda-cash-flow/.

laws and collecting cases).  Accordingly, Defendants have disclosed some of the information related to the projections relied upon by Evercore but have omitted crucial line items and reconciliations. Thus, Defendants' omission renders the projections disclosed on page 39 and 40 of the Proxy misleading.

34.     Second, the financial analyses conducted by Evercore regarding the Proposed Transaction are materially misleading as well.

35.     With respect to Evercore's *Corporate Level—Discounted Cash Flow Analysis*, the Proxy is materially misleading and incomplete because it fails to disclose the inputs and assumptions underlying the discount rates of 6.5% to 7.5%, the range of EBITDA exit multiples of 9.0x to 11.0x, and the range of perpetuity growth rates of .25% to .75%. Proxy at 43.  Further, the Proxy omits the terminal values observed for TGE and the Company's projected outstanding Class A shares as of January 1, 2020.  *Id.*

36.     As for Evercore's *Sum of the Parts—Discounted Cash Flow Analysis*, an analysis was conducted for each of the distinct segments of TGE.  In each of the segment analyses, the Proxy omits underlying assumptions and inputs regarding the respective: (i) terminal values; (ii) estimated range of EBITDA exit multiples; (iii) range of discount rates; and (iv) range of perpetuity growth rates. *Id.* at 45-48.

37.     These key inputs are material to TGE shareholders, and their omission renders the summary of Evercore's Discounted Cash Flow Analyses incomplete and misleading.  As one highly-respected law professor explained regarding these crucial inputs, in a discounted cash flow analysis a banker takes management's forecasts, and then makes several key choices "each of which can significantly affect the final valuation."  Steven M. Davidoff, Fairness Opinions, 55 Am. U.L. Rev. 1557, 1576 (2006).  Such choices include "the appropriate discount rate, and the terminal value…" *Id.*  As Professor Davidoff explains:

> *There is substantial leeway to determine each of these, and any change can markedly affect the discounted cash flow value. For example, a change in the discount rate by one percent on a stream of cash flows in the billions of dollars can change the discounted cash flow value by tens if not hundreds of millions of dollars*....This issue arises not only with a discounted cash flow analysis, but with each of the other valuation techniques. *This dazzling variability makes it difficult to rely, compare, or analyze the valuations underlying a fairness opinion **unless full disclosure is made of the various inputs in the valuation process, the weight assigned for each, and the rationale underlying these choices***. The substantial discretion and lack of guidelines and standards also makes the process vulnerable to manipulation to arrive at the "right" answer for fairness. This raises a further dilemma in light of the conflicted nature of the investment banks who often provide these opinions.

*Id.* at 1577-78 (emphasis added). Without the above-mentioned information, TGE's shareholders cannot evaluate for themselves the reliability of Evercore's Discounted Cash Flow Analyses, make a meaningful determination of whether the implied equity value ranges reflect the true value of the Company or was the result of an unreasonable judgment by Evercore, and make an informed decision regarding whether to vote in favor of the Proposed Transaction.

38.     Evercore's *Corporate Level—Discounted Dividend Analysis* is also materially misleading because the Proxy omits the assumptions and inputs underlying the terminal value of TGE, the terminal yield range of 8.0% to 12.0%, and the cost of equity range of 7.5% to 8.5%. Proxy at 44.

39.     As for Evercore's *Corporate Level—Peer Group Trading Analysis*, the Proxy fails to disclose the market values and trading multiples observed for each of the ten publicly-traded companies. The Proxy also omits TGE's projected number of Class A shares as of January 1, 2020. *Id.* at 44-45.

40.     With respect to Evercore's *Sum of the Parts—Precedent M&A Transaction Analysis*, the Proxy omits the projected number of outstanding Class A shares of TGE as of January 1, 2020. Further, the Proxy fails to disclose the individual purchase prices for each of the selected acquisitions observed for the respective segment analysis. *Id.* at 48-52.

10

41.     For Evercore's *Sum of the Parts—Peer Group Trading Analysis*, the Proxy omits the individual multiples observed for each of the selected companies. *Id.* at 52-57.

42.     Defendants' failure to provide the foregoing material information renders the statements in the Proxy false and/or materially misleading.

43.     In sum, the omission of the above-referenced information renders the Proxy materially incomplete and misleading, in contravention of the Exchange Act.  Absent disclosure of the foregoing material information prior to the upcoming Shareholder Vote concerning the Proposed Transaction, Plaintiff will be unable to make an informed decision regarding whether to vote their shares in favor of the Proposed Transaction, and are thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CAUSES OF ACTION

### COUNT I

### (Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9)

44.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

45.     Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title."  15 U.S.C. § 78n(a)(1).

46.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications shall not contain "any statement which, at the time and in

the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

47.     The omission of information from a proxy will violate Section 14(a) and Rule 14a-9 if other SEC regulations specifically require disclosure of the omitted information.

48.     Defendants have issued the Proxy with the intention of soliciting the Company's Class A shareholders' support for the Proposed Transaction.  Each of the Individual Defendants reviewed and authorized the dissemination of the Proxy, which fails to provide critical information regarding, amongst other things: (i) financial projections for TGE; and (ii) the valuation analyses performed by Evercore in support of its fairness opinion.

49.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).  The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy, but nonetheless failed to obtain and disclose such information to the Company's shareholders although they could have done so without extraordinary effort.

50.     The Individual Defendants knew or were negligent in not knowing that the Proxy is materially misleading and omits material facts that are necessary to render it not misleading.  The Individual Defendants undoubtedly reviewed and relied upon most if not all of the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction; indeed, the Proxy states that Evercore reviewed and discussed its financial analyses with the Board, and further states that the Board considered the financial analyses provided by Evercore, as well as its fairness opinion and the assumptions made and matters considered in

connection therewith.  Further, the Individual Defendants were privy to and had knowledge of the projections for the Company and the details surrounding the process leading up to the signing of the Merger Agreement.  The Individual Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy, rendering the sections of the Proxy identified above to be materially incomplete and misleading.  Indeed, the Individual Defendants were required to, separately, review Evercore's analyses in connection with their receipt of the fairness opinions, question Evercore as to its derivation of fairness, and be particularly attentive to the procedures followed in preparing the Proxy and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

51.     The Individual Defendants were, at the very least, negligent in preparing and reviewing the Proxy.  The preparation of a proxy statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence.  The Individual Defendants were negligent in choosing to omit material information from the Proxy or failing to notice the material omissions in the Proxy upon reviewing it, which they were required to do carefully as the Company's directors.  Indeed, the Individual Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and preparation and review of the Company's financial projections.

52.     TGE is also deemed negligent as a result of the Individual Defendants' negligence in preparing and reviewing the Proxy.

53.     The misrepresentations and omissions in the Proxy are material to Plaintiff, who will be deprived of their right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the Shareholder Vote.  Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

### (Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act)

54.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

55.     The Individual Defendants acted as controlling persons of TGE within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of TGE, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

56.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

57.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same.  The Proxy contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction.  They were thus directly involved in preparing this document.

58.     In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.  The Proxy purports to describe the various issues and information that the Individual Defendants

reviewed and considered.  The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

59.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

60.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

61.     Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.     Preliminarily enjoining Defendants and all persons acting in concert with them from proceeding with the Shareholder Vote or consummating the Proposed Transaction, unless and until the Company discloses the material information discussed above which has been omitted from the Proxy;

B.     Directing the Defendants to account to Plaintiff for all damages sustained as a result of their wrongdoing;

C.     Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

D.     Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: February 4, 2020         **MONTEVERDE & ASSOCIATES PC**

By:   */s/ Juan E. Monteverde*
        Juan E. Monteverde (JM-8169)
        The Empire State Building
        350 Fifth Avenue, Suite 4405
        New York, NY 10118
        Tel:(212) 971-1341
        Fax:(212) 202-7880
        Email: jmonteverde@monteverdelaw.com

        *Attorneys for Plaintiff*